# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EMMANUEL GAZMEY-SANTIAGO, et al.,** <br><br> Plaintiffs, <br><br> v. <br><br> **CARLOS SUAREZ, et al.,** <br><br> Defendants. | **Civil No. 17-1650 (ADC)** |

## OPINION AND ORDER

On May 25, 2017, plaintiffs Emmanuel Gazmey-Santiago ("Anuel") and Anuel's father, José Gazmey, d/b/a Gazmey Music Publishing ("Gazmey") (collectively, "plaintiffs"), filed an amended complaint against Carlos Suárez ("Suárez" or "defendant") and unknown defendants, alleging copyright infringement, breach of contract, and misappropriation of image and likeness.[1] **ECF No. 4**. Plaintiffs seek compensatory, injunctive, and declaratory relief, and invoke the Court's original jurisdiction over a civil action arising under federal trademark and copyright laws, 28 U.S.C. § 1338, as well as the Court's diversity jurisdiction, 28 U.S.C. § 1332. **ECF No. 4** at 2.

On January 26, 2018, Suárez moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim, under Federal Rules of Civil Procedure 12(b)(2) and (6).

---

[1] On December 14, 2017, the Court granted plaintiff's motion to voluntarily dismiss the claims against Maybach Music Latino, Maybach Music Group, and William Leonard Roberts, II ("Rick Ross"), **ECF Nos. 23** and **24.**

**ECF No. 30**. Alternatively, Suárez asks the Court to transfer venue to the Middle District of Florida, under 28 U.S.C. § 1404. *Id*. Plaintiffs opposed the motion to dismiss. **ECF No. 33**. With leave from the Court, Suárez replied to plaintiffs' opposition, **ECF No. 44**, to which plaintiffs filed a surreply, **ECF No. 48**. The Court now **GRANTS** defendant's motion to dismiss the complaint for lack of personal jurisdiction, **ECF No. 30**, and **DISMISSES THE COMPLAINT WITHOUT PREJUDICE**.

I.  **Applicable Law**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to raise by motion a defense of lack of personal jurisdiction. Under federal law, personal jurisdiction can exist through two different avenues: specific jurisdiction and general jurisdiction. *Donatelli v. National Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990). Specific jurisdiction is the "jurisdiction which a state may assert when a suit arises directly out of forum-based activities," while general personal jurisdiction "may be asserted in connection with suits not directly founded on forum-based conduct." *Id.* (citations omitted).

Suárez argues that the Court lacks general and specific jurisdiction over him, **ECF No. 30** at 13, and plaintiffs only argue that the Court has specific jurisdiction over Suárez, s*ee* **ECF No. 33** at 4, 13. Because the burden of proving personal jurisdiction rests on plaintiffs, the Court will only analyze if it has specific jurisdiction over Suárez. *Bluetarp Financial, Inc. v. Matrix Const. Co., Inc.*, 709 F.3d 72, 79 (1st Cir. 2013) (citing *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010)).

"Personal jurisdiction implicates the power of a court over a defendant. In a federal court, both its source and its outer limits are defined exclusively by the Constitution." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 143–44 (1st Cir. 1995) *(*citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, (1982)). "A federal court may assert specific jurisdiction over a defendant only if doing so comports with both the forum's long-arm statute and the Due Process Clause of the United States Constitution." *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011) (citing *Barrett v. Lombardi,* 239 F.3d 23, 26 (1st Cir. 2001)). In this case, "the two modes of analysis merge into one because the reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause."[2] *Id.* (citing *Negrón–Torres v. Verizon Commc'ns, Inc.,* 478 F.3d 19, 24 (1st Cir. 2007)). "The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants." *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). For specific jurisdiction, "the defendant must have sufficient 'minimum contacts' with the state [and] plaintiff's claim must be related to the defendant's contacts." *Id.* "It is axiomatic that a court asserting jurisdiction over a nonresident defendant must find that the defendant maintains sufficient contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Negrón-Torres*, 478 F.3d at 24 (internal quotations omitted). The defendant's contacts

---

[2] "Puerto Rico's long-arm statute allows Puerto Rico courts to exercise jurisdiction over a non-resident defendant if the action arises because that person: (1) '[t]ransacted business in Puerto Rico personally or through an agent'; or (2) 'participated in tortuous acts within Puerto Rico personally or through his agent.'" *Negrón-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d at 24 (quoting P.R. Laws Ann. tit. 32, App. III, R. 4.7(a)(1)).

must also be "purposeful," and "the exercise of jurisdiction must be reasonable under the circumstances." *Harlow*, 432 F.3d at 57.

When a court adjudicates a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court applies the "prima facie" standard:

> To satisfy the prima facie standard in a specific jurisdiction case, a plaintiff may not rest on mere allegations but, rather, must submit competent evidence showing sufficient dispute-related contacts between the defendant and the forum. The court, in turn, must view this evidence, together with any evidence proffered by the defendant, in the light most favorable to the plaintiff and draw all reasonable inferences therefrom in the plaintiff's favor. A court need not, however, credit bald allegations or unsupported conclusions.

*Carreras*, 660 F.3d at 552 (internal citations omitted). *See also Bluetarp Fin., Inc.*, 709 F.3d at 79; *Phillips v. Prairie Eye Center*, 530 F.3d 22, 26 (1st Cir. 2008).

## II.  Alleged Facts

It is alleged in the complete that Anuel is a rap, trap, and reggaeton recording artist from Puerto Rico that signed a contract with Suárez to market and economically exploit Anuel's recordings and his image.[3] **ECF No. 4** at 5. The complaint alleges that the contract gives Anuel the right to 50% of all the profits generated *Id*. Gazmey contacted Suárez to obtain a copy of the contract, which the fairness and terms of are now being challenged, but Suárez did not provide copies of the same before the filing of the complaint. *Id.* at 6. Suárez admitted to Anuel that the contract had expired two years prior, and asked Anuel to sign an extension, which Anuel has refused to sign. Suárez also approached Gazmey to sign a contract extension in name of his son,

---

[3] The parties dispute the existence of the contract, its terms, and its validity. The Court will address these issues in turn.

Anuel. Suárez has been exercising ownership rights over Anuel's copyrights, image and likeness despite the expiration of the contract, and has reaped economic benefits without payment to plaintiffs. *Id.* at 7. Suárez controls Anuel's channel in YouTube and other internet platforms without authorization from Anuel, and has been selling merchandise in Puerto Rico through the Internet without a contract. *Id.* at 8. Accordingly, plaintiff asserts that Suárez's acts in Puerto Rico have been substantial, continuous, and systematic. It is also asserted that most of Anuel's followers are in Puerto Rico, as are the vast majority of downloads and streamings of Anuel's music and videos.

### III. Personal jurisdiction over Suárez

The First Circuit has established a three-part test to determine if personal jurisdiction exists:

> First, the court must ask whether the asserted causes of action arise from or relate to the defendant's contacts with the forum. Second, the court must consider whether the defendant purposefully availed itself of the protections of the forum's laws by means of those contacts, such that the defendant could reasonably foresee being haled into the forum's courts. Third, the court must consider whether an exercise of jurisdiction is consistent with principles of justice and fair play. Specific jurisdiction lies only if all of these queries are susceptible to affirmative answers.

*Carreras*, 660 F.3d at 554 (citing *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999); *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir. 1994)).

Suárez's motion to dismiss for lack of personal jurisdiction argues, in sum, that plaintiffs have failed to allege and adduce sufficient facts to conclude that Suárez had the required minimum contacts with Puerto Rico. **ECF No. 30**. The complaint specifically alleges that Suárez

does not reside in Puerto Rico, does not transact business in Puerto Rico, does not own real property in Puerto Rico, and does not have any bank accounts in Puerto Rico. *Id.* at 6.

Mindful that plaintiffs bear the burden of showing that the Court has personal jurisdiction over Suárez, the Court now addresses the three prongs of the prima facie test for personal jurisdiction. *See Carreras*, 660 F.3d at, 552.

Plaintiffs' response in opposition to the motion to dismiss ignores the applicable prima facie standard and fails to argue whether the asserted causes of actions meet the relatedness, purposeful availment, or reasonableness prongs of the prima facie test. *See* **ECF No. 33** at 9-14. Instead, plaintiffs argue that the Court's inquiry into whether personal jurisdiction exists rests exclusively on the three-part effects test announced in *Calder v. Jones*, 465 U.S. 783 (1984). **ECF No. 33** at 5, 9. In *Calder*, a California resident brought a libel suit in California courts against a magazine for an article written and edited in Florida. Six-hundred thousand copies of the magazine were sold in California, "almost twice the level of the next highest State." *Calder*, 465 U.S. at 783. The Supreme Court held that "California [was] the focal point of both the story and of the harm suffered," and that jurisdiction over the defendants was proper in California "based on the 'effects' of their Florida conduct in California." *Id.* at 788-89. The Court noted that, because defendants' "intentional, and allegedly tortious, actions were expressly aimed at California . . . [defendants] must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." *Id* at 789 (quotation omitted).

The First Circuit Court of Appeals has rejected reading *Calder* for the broad proposition that any act with foreseeable effects in the forum gives rise to personal jurisdiction. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 25 (1st Cir. 2001). *Calder's* effects test "was adopted for determining *purposeful availment* in the context of defamation cases. Thus, the 'effects' test is a gauge for purposeful availment and is to be applied only after the relatedness prong has already been satisfied." *Id*. (citations omitted).

Although plaintiffs have failed to explain how the three prongs of the prima facie test apply to their complaint, the Court will consider their allegations, evidentiary proffers, and legal analysis in the light most favorable to them.

Plaintiffs allege that "the parties agreed that the musical works would be distributed and sold in the territory of Puerto Rico," and "Suárez has intentionally continued distribution for sale of the musical products and monetization of [Anuel's] likeness and persona in the Puerto Rico forum." **ECF No. 33** at 9. They claim that the "sales of the Anuel's products [sic], streaming revenues through YouTube and monetization of his publishing rights in the forum are enormous." *Id.* at 9. Plaintiffs support the magnitude of Anuel's YouTube audience by submitting a screenshot of a YouTube page that indicates that Anuel has had 74,138,944 views. **ECF No. 33-6, Exhibit 6**. However, this exhibit does not indicate the time period of the views, and which correspond to Puerto Rico.

The amended complaint alleges that Anuel's followers "are in Puerto Rico and the vast majority of downloads and streamings take place in Puerto Rico." **ECF No. 4** at 7.

> To make a prima facie showing of this caliber, the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts. Withal, the district court acts not as a factfinder, but as a data collector. That is to say, the court, in a manner reminiscent of its role when a motion for summary judgment is on the table, *see* Fed. R. Civ. P. 56(c), must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.

*Foster-Miller, Inc.*, 46 F.3d at 145 (citations omitted).

In support, plaintiffs cite Exhibit 1 of the amended complaint, **ECF No. 4-1**. Exhibit 1 is a screenshot of a YouTube page listing the top artists in San Juan, Puerto Rico. "Anuel AA" is listed as the fourth artist, with 10,910,152 total views. The top artist, Romeo Santos, has 23,888,426 total views. Plaintiffs allege that the vast majority of views of Anuel's channel are from Puerto Rico. This screenshot, however, simply shows how many YouTube views Anuel had in San Juan or Puerto Rico. The significance of this number is not self evident without any showing of what Anuel's YouTube views were in comparison to all of the other jurisdictions in the country. Without this context, the Exhibit has little probative value. Thus, plaintiffs' allegations that Anuel's followers "are in Puerto Rico and the vast majority of downloads and streamings take place in Puerto Rico[]" is a conclusory allegation. To make a prima facie showing of this caliber, the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts. *See id.*

Exhibit 2 to the amended complaint includes a graph titled "Reports/Sales by billing Country" and a table that states that the billing region is Puerto Rico. **ECF No. 4-2**. However, the amended complaint does not explain what merchandise was sold, when it was sold, if

merchandise was sold in other states or countries, or what percentage of the total sales corresponds to the sales that occurred in Puerto Rico. Although this may well be a sizeable YouTube audience, it does not support the allegation that the revenues from Anuel's YouTube presence in *Puerto Rico* are significant.

Plaintiffs also allege that "[m]ost of the income derived from [the YouTube views] comes from local advertising," and that Anuel has had over 525,298 total views in Puerto Rico. *Id.*; **Exhibit 9**, **ECF No. 33-9**. However, Exhibit 9 lists views from San Juan, Puerto Rico, which occupies the nineteenth position of cities with most views, a number comparable to those listed for Houston, Texas; Managua, Nicaragua; and Boston, Massachusetts, in the same exhibit. **ECF No. 33-9**.

These facts compare unfavorably to the facts of *Calder*. In *Calder*, the magazine sold twice as many copies in California than in the second largest market, and the article in question was directed towards a citizen of California. The statistics proffered by plaintiffs thus fail to meet the *Calder* test. As the record does not support their allegation that Puerto Rico represents a significantly larger share of the market for Anuel's products.

The complaint also alleges that Suárez controlled Anuel's pages in Apple Music, iTunes, Spotify, Google Play, Pandora, or Deezer pages, as well as the merchandise sold through a website. **ECF No. 4** at 8, 10. It does not allege—and the proffered facts fail to support—that Suárez had any control over where these third-party websites made the content available, or who would be able to purchase advertisements for individuals that consumed Anuel's products.

This situation is more similar to placing a product in the stream of commerce, which is insufficient to justify personal jurisdiction:

> The "substantial connection," between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112, (1987) (citations omitted). *See also Phillips*, 530 F.3d at 28 ("defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant.") (collecting cases)).

Plaintiffs also argue that the payments that Suárez made to Gazmey for the YouTube views are, in and of themselves, sufficient to create personal jurisdiction over Suárez. **ECF No. 33** at 9. While "the location where payments are due under a contract is a meaningful datum for jurisdictional purposes," "that fact alone does not possess decretory significance," particularly when the receipt of payment is "merely an in-forum effect of an extra-forum breach," it is "inadequate to support" a finding in favor of personal jurisdiction. *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 291 (1st Cir. 1999). *See American Exp. Intern., Inc. v. Méndez-Capellán*, 889 F.2d 1175, 1178–79 (1st Cir. 1989) (noting that "the mere deposit of funds in a bank account

in Puerto Rico is insufficient to confer *in personam* jurisdiction"). The fact that Suárez may made payments to Gazmey in Puerto Rico is not, by itself, enough to find that the Court has personal jurisdiction over Suárez.

Finally, plaintiffs argue that Suárez had sufficient minimum contacts in Puerto Rico because Anuel and Suárez signed a contract in Puerto Rico.[4] **ECF No. 33**. But, plaintiffs' response to the motion to dismiss also asserts that Suárez falsified the contract that originated the dispute between the parties. *Id.* at 2. They further allege that "Suárez came personally to Puerto Rico to negotiate and entice Anuel into a contract," and assert they reached an agreement in this forum, "which was later formalized into a written agreement" outside the district. *Id.* at 10. Plaintiffs support this argument with a sworn statement by Gazmey, in which he declares that Suárez and Anuel informed him that they met in Puerto Rico to negotiate a contract, and Joxsan Omar Torres Ayala witnessed the meeting. **ECF No. 33-1**. Defendant vigorously disputes this proffered evidence. **ECF No. 48**.

The amended complaint does not allege that the contract was drafted or signed in Puerto Rico. The Court finds that plaintiffs' arguments regarding the contract negotiations are not supported by an adequate evidentiary proffer. *See Foster-Miller, Inc.*, 46 F.3d at 145. Gazmey's unsworn statement contains inadmissible hearsay evidence while asserting that the contract

---

[4] Suárez also argues that he is not the true party to any contract with Anuel, as he is the President of High Society, LLC, the Florida Corporation that he alleges signed with Anuel. **ECF Nos. 33, 44**. Plaintiffs have not moved to amend the complaint to include High Society. Nonetheless, whether High Society is the true party to the contract is immaterial for the Court's analysis, as the Court lacks personal jurisdiction over Suárez even if he signed the contract in his personal capacity.

negotiation between Anuel and Suárez occurred in Puerto Rico. Anuel himself—who allegedly has first-hand knowledge of the meeting—could have submitted an unsworn statement regarding where and when the alleged meeting took place, the issues discussed, and the agreements reached, among other facts that would support an allegation that the meeting took place. Likewise, plaintiffs could have submitted a statement from Joxsan Omar Torres Ayala about what he observed, or even when the meeting took place. Instead, the Court is left with the conclusory allegation—in a response in opposition to a motion to dismiss—that the Suárez and Anuel negotiated the contract in Puerto Rico, without any details that would allow the Court to evaluate whether sufficient contacts exist in order to warrant personal jurisdiction over Suárez.

In sum, plaintiffs have failed to meet their burden of showing that the Court has personal jurisdiction over Suárez, as they have failed to meet the relatedness and purposeful availment prongs of the prima facie test. Plaintiffs have not submitted "competent evidence showing sufficient dispute-related contacts between the defendant and the forum." *Carreras*, 660 F.3d at 552 (internal citations omitted). None of Suárez's alleged conduct occurred in Puerto Rico, and defendant did not "purposely and voluntarily direct[] his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank, Ltd.*, 274 F.3d at 628. Suárez does not own, control, or operate the websites that distributed the products in dispute. Instead, he placed them in the stream of commerce, where third parties were the ones responsible for making the products available in the Puerto Rico market. Plaintiffs have also not demonstrated that a *significant* portion of the

income generated by Suárez comes from Puerto Rico. Finally, plaintiffs have failed to allege, without conclusory allegations based on hearsay, that Anuel and Suárez negotiated or perfected the contract in Puerto Rico.

**IV.  Conclusion**

In light of the above, defendant's motion to dismiss the complaint for lack of personal jurisdiction, **ECF No. 30**, is **GRANTED**. Furthermore, **ECF Nos. 36 and 51** are **DENIED**, and **ECF Nos. 46, 49, 53, and 54** are **NOTED**. The complaint is hereby **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of September, 2018.

                                                      **S/AIDA M. DELGADO-COLÓN**
                                                      **United States District Judge**